**Marla ROSS, Plaintiff–Appellant,**

v.

**MIDWEST COMMUNICATIONS, INC.,
d/b/a WCCO Television, Andy Green-
span and Al Austin, Defendants–Appel-
lees.**

No. 88–2105.

United States Court of Appeals,
Fifth Circuit.

March 31, 1989.
Rehearing Denied April 27, 1989.

John K. Schwartz, Richard L. Tate, Rich-
mond, Tex., for plaintiff-appellant.

David H. Donaldson, Jr., Austin, Tex.,
for defendants-appellees.

Before REAVLEY, HIGGINBOTHAM,
and SMITH, Circuit Judges.

PATRICK E. HIGGINBOTHAM,
Circuit Judge:

A television station broadcast a documen-
tary questioning the guilt of a man convict-
ed of rape. To make its case, the documen-
tary spelled out the details of several
rapes. One rape victim sued the maker of
the documentary, claiming an invasion of
privacy. Her actual first name and a pic-
ture of her residence had been used in the
documentary. The district court granted
summary judgment for the journalists on
both state law and constitutional grounds.
The rape victim appeals. We affirm, hold-
ing that no liability can attach under Texas
law because the details reported were
newsworthy as a matter of law.

I

Marla Ross, the plaintiff-appellant in this
case, was raped in 1983. She reported the
rape to police, but the rape remains un-
solved. During the investigation of the
rape, Steven Fossum was a suspect. The
police asked Ross to view a line-up that
included Fossum. Ross said that the man
who raped her was not among those in the
line-up.

Fossum was however convicted of two
other rapes. In 1986, WCCO–TV (Midwest
Communications, Inc.), and its reporters Al
Austin and Andy Greenspan, prepared a
documentary designed to prove Fossum's
innocence. WCCO, Austin, and Greenspan
are the defendant-appellees in this case. In
addition to presenting other evidence,
WCCO's documentary sought to show that
the details of the first rape for which Fos-
sum had been convicted were nearly identi-
cal to the details of the Ross rape. WCCO
suggested that the two rapes were proba-

bly committed by the same person, and that Ross's failure to identify Fossum as the rapist in her case indicated that he was innocent of both rapes. In order to demonstrate the similarity of the two rapes, WCCO described the pretext used by the rapist to gain entrance to the victim's home (the rapist claimed to work for Genex Homes, to have lost an Irish Setter, and to desire to make a phone call), the sexual demands of the rapist during the assault, and the rapist's fixation with baths and showers. WCCO also mentioned some details which Ross claims were inaccurate with respect to her rape, including the rapist's use of a jar of coins or trinkets, balanced on the bound victim's body, as an alarm to aid his escape.

WCCO referred to Ross as "Marla," her actual first name, during the documentary. WCCO used in the documentary an actual photograph of the house in which Ross lived at the time of the rape.

The documentary aired in Houston in May of 1986. The Governor of Texas pardoned Fossum for the second of the two rapes. That was not the rape to which the Ross case was relevant. A motion for new trial on the first rape conviction, the Susan Lewis rape, was pending at the time this case was briefed. The documentary received the Dupont Columbia Award, which WCCO claims is "the most prestigious award in broadcast journalism."

In September 1986, Ross and her husband sued WCCO, Greenspan, Austin, and Belo Broadcasting in Texas state court for invasion of privacy. Defendants WCCO, Greenspan, and Austin were Minnesota residents, and removed on the basis of diversity. Ross later dropped her suit against Belo Broadcasting, the only local defendant. WCCO, Austin, and Greenspan sought summary judgment. The district court granted summary judgment for defendants on both state law and Constitutional grounds. The court reasoned that because Fossum's interest and the public's interest in reversing false convictions outweighed Ross's privacy interest, the journalists had no liability.

## II

On appeal, neither party urges us to endorse the open-ended balancing of interests performed by the district court and we do not. We are not bound to accept the district court's rationale for its decision, and are free to affirm the district court's decision on alternative grounds, if those grounds have been properly preserved.

WCCO suggests two grounds for affirmance. Both grounds were submitted to the district court. First, WCCO contends that the details of the Ross rape bore a logical nexus to matters of legitimate public concern, so that both Texas state tort law and federal constitutional law prohibit the imposition of liability for the publication of those details. *See Industrial Foundation of the South v. Texas Industrial Accident Board,* 540 S.W.2d 668, 682 (Texas 1976) (no state law liability for invasion of privacy if the details published were "of legitimate public concern"); *Campbell v. Seabury Press,* 614 F.2d 395, 397 (5th Cir.1980) (identifying, by reference to common law rules, a First Amendment privilege "to publish or broadcast news or other matters of public interest").

Second, WCCO contends that the details published come within the scope of the bright-line rule articulated in *Cox Broadcasting Corp. v. Cohn,* 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) (publication of matters of public record). Alternatively, WCCO, relying upon *Cox Broadcasting* and later cases including *Smith v. Daily Mail Publishing,* 443 U.S. 97, 102–03, 99 S.Ct. 2667, 2670–71, 61 L.Ed.2d 399 (1979), asks us to recognize a broader bright-line rule, one which would preclude the states from imposing liability for any publication of truthful information lawfully obtained.

Under the familiar maxims set out by Justice Brandeis in *Ashwander v. Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), this court will not pass upon a constitutional question if a statutory ground is available, and will not formulate a broader constitutional rule than the facts of a particular case require. Both lines of reasoning proposed by WCCO are of consti-

tutional dimension. In the "newsworthiness" line of argument, however, the state law and constitutional tests are the same. The First Amendment restrictions we identify in that line of inquiry are no different from those imposed on the privacy tort by the terms of Texas state law itself. By contrast, the bright-line rules contended for by WCCO either establish independent limitations upon the state's ability to define the scope of the "newsworthiness" defense, or go beyond that defense to establish protection for some arguably non-newsworthy publications. In order to avoid announcing constitutional restrictions unnecessarily, and so in adherence to the counsels of *Ashwander*, we begin our analysis with the "newsworthiness" line of argument.

Under Texas law, an action for invasion of privacy will lie for four sorts of injuries:

1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.
2. Public disclosure of embarrassing private facts about the plaintiff.
3. Publicity which places the plaintiff in a false light in the public eye.
4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

*Industrial Foundation of the South v. Texas Industrial Accident Board*, 540 S.W.2d 668, 682 (Texas 1976), *quoting* W. Prosser, *Privacy*, 48 Cal.L.Rev. 383, 389 (1960). The first of these injuries exists only when there has been "a physical invasion of a person's property or ... eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying." *Gill v. Snow*, 644 S.W.2d 222, 224 (Tex.App.—Fort Worth 1982). Ross's suit must therefore be considered under the rubric of the second form of injury, public disclosure of embarrassing facts.

Ross, "in order to recover for public disclosure of private facts about [herself], must show (1) that publicity was given to matters concerning h[er] private life, (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities, and (3) that the matter publicized is not of legitimate public concern." *Industrial Foundation*, 540 S.W.2d at 682, *citing* W. Prosser, *Law of Torts* § 117, p. 809 (4th ed. 1971).

To apply this test, we must first ascertain what "private facts" Ross is alleging WCCO to have disclosed. There are at least three possibilities: (A) the details of the rape itself; (B) the allegedly false details included in the report; and (C) Ross's first name and the appearance of her former residence.

■ Ross has contended vigorously that the details of the rape were themselves "private facts." Yet these facts were clearly of "legitimate public concern." The Ross brief itself effectively concedes as much. With respect to WCCO's suggestion that Fossum is innocent of the Lewis rape because innocent of the Ross rape, the brief says, "WCCO's theory was intriguing and, if verifiable, undoubtedly worthy of public disclosure in one form or another." The brief adds the proviso that "the facts of Mrs. Ross's rape did not fit the theory," but this proviso amounts at most to an argument that WCCO's theory was wrong. That argument does not generate a material issue of fact as to whether the theory addressed a matter of legitimate public concern. The details of the Ross rape are relevant to Fossum's innocence, a legitimate matter of public concern, so long as the Ross and Lewis rapes are sufficiently similar to generate a reasonable argument that the rapes were committed by the same individual. The argument need not be convincing to all, or even most, of its auditors. It need only be, as Ross's brief nicely puts it, reasonably "intriguing" to a concerned public.

There is no doubt that WCCO's report on the Ross and Lewis rapes meets this standard. The excuses used by each rapist to enter the victims' homes were strikingly similar: both attackers claimed to be employed by Genex homes, and to have lost a dog. Even absent the details contested by Ross, the demands made by the two rapists were, again, strikingly similar. So were the descriptions provided by the victims. We have no difficulty finding that, under Texas law, WCCO's report of these details does not give rise to a cause of action for invasion of privacy, for the details are evidently of "legitimate public concern."

■ The second possibility, that the "private facts" are the allegedly false details of the Ross rape, is inconsistent with Ross's apparent theory of liability. She did not file a libel claim. Indeed, the problem with such a cause of action, from Ross's

perspective, would be that the damages she seeks stem from the disclosure of the uncontested, rather than the disputed, details of her rape. Nor would the inclusion of some inaccuracies in WCCO's documentary detract from the newsworthiness of the facts correctly reported. We do not understand Ross to rely on these allegedly false details as a ground for her suit. Rather, we understand her to suggest that WCCO's inclusion of some false claims is evidence that the true material was not newsworthy.

The third possibility, that the "private fact" is Ross's identity as the rape victim, is the basis for Ross's strongest argument. She contends that even if the details of her rape were newsworthy, the documentary could have been produced without mentioning her name, and thus without disclosing the indignities of her rape to the world. This argument, however, is difficult to accommodate within the literal terms of the privacy tort definition, quoted above. Ross's name, residence, or "identity" are not easily characterized as "private, embarrassing facts." The more common form of privacy tort involves the disclosure of facts which are interesting precisely because the facts are about a known, specified individual. *See, e.g., Gill v. Snow*, 644 S.W.2d 222; *Campbell v. Seabury Press*, 614 F.2d 395 (5th Cir.1980). The public concern over these facts is inseparable from the public concern over the connection between the facts and the individual involved.

To bring this case within the ambit of the *Industrial South* test, we must characterize the essential question as whether *Ross's connection to the rape details*—themselves a subject of public concern—was itself also a matter of public concern. This issue is apparently one of first impression in Texas. We have not found any Texas cases contesting the newsworthiness of an individual's personal connection to the details of an event which are concededly newsworthy in themselves.

The Tenth Circuit did, however, consider this question in *Gilbert v. Medical Economics Co.*, 665 F.2d 305, 308 (10th Cir. 1981). *Gilbert* involved a periodical article describing an alleged breakdown in the evaluation of a doctor's fitness, and a consequent malpractice problem. The plaintiff, Gilbert, was the subject of the story. Her name was used, and details of her personal life were revealed. The trial court granted summary judgment for the defendant on constitutional grounds. The Tenth Circuit affirmed. The court cited with approval our decision in *Campbell*, and construed the scope of the First Amendment protection against liability for publication by reference to the elements of the privacy tort: the constitution barred liability for the dissemination of true, private information if no liability would exist under the common law tort. The Court of Appeals concluded that Gilbert's connection to the malpractice incident was a matter of legitimate public concern. The court stated that "plaintiff's photograph and name" were "substantially relevant to a newsworthy topic because they strengthen the impact and credibility of the article. They obviate any impression that the problems raised in the article are remote or hypothetical, thus providing an aura of immediacy and even urgency that might not exist had plaintiff's name and photograph been suppressed." 665 F.2d at 308.

■ WCCO and its reporters make a similar argument for its use of Ross's first name, and for its photograph of her former residence. The journalists argue that the use of Ross's name, and the picture of her residence, provides a "personalized frame of reference that fosters perception and understanding," and avoids the loss of credibility that comes with anonymity.

This argument has force. The infamous Janet Cooke controversy (about the fabricated, Pulitzer–Prize winning Washington Post series on the child-addict, Jimmy) suggests the legitimate ground for doubts that may arise about the accuracy of a documentary that uses only pseudonyms. On the other hand, WCCO did use some pseudonyms in its documentary, and WCCO could have demonstrated the accuracy of its report by using the police department's offense number for each incident. Numbers, however, are easily forgotten, and would most likely have less impact.

The argument establishing a logical nexus between the rape victim's name and a matter of legitimate public concern is peculiarly strong in this case because the point of the publication was to persuade the public, and in turn authorities, to a particular view of particular incidents. Communicating that this particular victim was a real person with roots in the community, and showing WCCO's knowledge of the details of the attack upon her, were of unique importance to the credibility and persuasive force of the story. We thus may, and now

do, decide that Ross's connection to the details of the rape in this case was a matter of legitimate public interest, without also deciding that the name of a rape victim is *always* a matter of public concern if her rape is a matter of public concern.

We reach this conclusion aware that judges, acting with the benefit of hindsight, must resist the temptation to edit journalists aggressively. Reporters must have some freedom to respond to journalistic exigencies without fear that even a slight, and understandable, mistake will subject them to liability. Exuberant judicial blue-pencilling after-the-fact would blunt the quills of even the most honorable journalists. Yet we need not now decide the extent of judicial deference to editorial discretion. Here, it is at least arguable, even with the benefit of hindsight, that WCCO was correct in its judgment about the newsworthiness of the victim's identity. That conclusion, although it no way diminishes the victim's legitimate distress, justifies the district court's grant of summary judgment to defendants.

### III

Our holding today is narrow. Our decision turns upon the peculiar facts present in this case. We point out that the doctrine we announce today, although it justifies the district court's award of summary judgment against Ross, does not leave rape victims without any protection against public disclosure of their names. First, the discussion above leaves open the possibility that the rape victim's name may be irrelevant when the details of the rape victim's experience are not so uniquely crucial to the story as they are in this case, or when the publisher's "public concern" goes to a general, sociological issue. Second, the discussion leaves open the state's power to protect rape victims' privacy by preserving the confidentiality of the state's records, and punishing any who steal the information. Liability for the wrongful taking of information could encompass damages resulting from the foreseeable publication of the information. *Consider Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 836–37, 98 S.Ct. 1535, 1540–41, 56 L.Ed.2d 1 (1978) (suggesting that Virginia might preserve the confidentiality of judicial disciplinary proceedings by punishing those who disclose the information, rather than third parties who publish the information).

Moreover, we find it unnecessary to reach any of the other issues briefed by the parties. We need not, for example, determine whether WCCO enjoyed immunity from liability because of constitutional protection for the publication of matters contained in public records, or more generally for the publication of truthful materials lawfully obtained. *See, e.g., Smith v. Daily Mail Publishing*, 443 U.S. 97, 102–03, 99 S.Ct. 2667, 2670–71, 61 L.Ed.2d 399 (1979) ("our recent decisions ... all suggest strongly that if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order"); *see also, Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (no liability for publication of matters of public record); *Landmark Communications, Inc.*, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (no liability for publication of lawfully-obtained confidential information about a public official); *Worrell Newspapers of Indiana, Inc. v. Westhafer*, 739 F.2d 1219, 1225 (7th Cir.1984), *aff'd*, 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985) ("when the press, by whatever means, obtains the information contained in a court-sealed document, a state cannot prohibit the publication of the information without violating the First Amendment"); *WXYZ, Inc. v. Hand*, 658 F.2d 420, 427 (6th Cir. 1981) (statute is unconstitutional insofar as it purports to determine conclusively and in every case that privacy interests of rape victim outweigh public need to know victim's identity). Nor does this case require us to decide how much "breathing room" is available to protect an editor, who publishes information that was potentially but not actually newsworthy, from retrospective judicial blue-pencilling.

Our constitutional warrant authorizes us to decide only those "cases and controversies" actually before us. Nowhere is the wisdom of that restriction more apparent than in cases like the present one, which poses a conflict between two fundamental aspects of individual liberty: a citizen's right to be free from public inquiry into private matters, and a journalist's right to report upon matters of legitimate public concern. The broad issues suggested but not raised by Ross's claim are therefore deferred until we must in fact decide them.

The judgment of the district court is AFFIRMED.