Jane DOE, Appellant,

v.

The STAR TELEGRAM, INC., d/b/a Fort Worth Star Telegram; Betsy C.M. Tong, Individually and as journalist for Star Telegram, Inc. d/b/a Fort Worth Star Telegram, Appellees.

No. 2–92–183–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 3, 1993.

Rehearing Overruled Dec. 7, 1993.

Hooper & Evans, and David L. Evans, Richard C. DeBerry, Haney & Murphy, P.C., and Mark A. Haney, Fort Worth, for appellant.

Bishop, Payne, Williams & Werley, L.L.P., and Thomas J. Williams, Fort Worth, for appellees.

Before FARRIS and HICKS, JJ., and HOPKINS, J., Retired, Sitting By Assignment.

## OPINION

FARRIS, Justice.

Jane Doe sued Fort Worth Star–Telegram (Star–Telegram) and Betsy Tong, a journalist, claiming they invaded her privacy by publishing two articles about a sexual assault committed against her. On appeal, Doe's sole point of error is the trial court erred in granting Star–Telegram and Tong's motion for summary judgment. Because a fact issue exists as to whether Star–Telegram and Tong obtained the information they published lawfully, Doe's point of error is sustained. The trial court's judgment is reversed and the cause is remanded for trial.

Shortly after the assault occurred, Doe described the incident to Fort Worth police and they prepared a report. A few days later, Tong, a "police beat" reporter for the Star–Telegram, checked the police reports and discovered the assault against Doe. The report disclosed Doe's age, her occupation as "owner" of a business, her business address, the make and model of her car, and the details of the assault.

Tong wrote two articles about Doe's rape and they were published on September 27, 1989 and September 28, 1989, three and four days after the assault occurred. The articles described how Doe was "repeatedly raped ... terrorized with a butcher knife ... forced to perform a sexual act and tied up with bed sheets." The first article also disclosed: the color, year, and make of Doe's distinctive imported luxury car; her age; the fact that she was taking medication; and the relative location of her residence in Fort Worth where she reportedly lived alone.

After the first article was published, Doe called the Star–Telegram complaining the article had identified her and it was causing her extreme distress. Despite her call, the second article was published and this one included the fact that she "owns a travel agency."

■ Doe sued Star–Telegram and Tong and they moved for summary judgment on the following theories:

(1) All the information published about appellant was true, and as a matter of law, there can be no liability for the publication by a newspaper of truthful information;[1]

---

1. Truth is not a defense to a charge of invasion of privacy by disclosure because falsity is not an

(2) As a matter of law, all the information published by appellees concerning appellant constituted matters of legitimate public concern, and accordingly, cannot form the basis of liability for invasion of privacy; (3) All the information published in this case was truthful information which Appellee lawfully obtained, and therefore, as a matter of law, the articles cannot form the basis of any liability to appellant; and (4) Appellees cannot be liable on any theory of negligence because the allegedly "negligent" acts were all constitutionally privileged.[2]

The trial court granted their motion but did not state upon which theory it entered judgment. Thus, to prevail on appeal, Doe must show each independent argument advanced in the motion fails to support the judgment. *See City of Coppell v. General Homes Corp.*, 763 S.W.2d 448, 451 (Tex. App.—Dallas 1988, writ denied).

Theory (1) advances a defense that is not available against an invasion of privacy claim and theory (4) concerns a claim Doe abandoned; therefore, these two theories do not support the judgment. To determine whether theories (2) and (3) support the judgment, we find the principles enumerated in *The Florida Star v. B.J.F.*, 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989) instructive, even though that case involved a statutory negligence per se cause of action.[3] *Florida Star* is controlling because it involved a conflict between truthful reporting and state-protected privacy interests, the exact issue presented here. *Id.*

In *Florida Star*, the Supreme Court applied the principle it articulated in *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979):

[I]f a newspaper lawfully obtains truthful information about a matter of public signif-

icance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order.

*Florida Star*, 491 U.S. at 533, 109 S.Ct. at 2609. In applying this principle, the Court considered three factors: (1) whether the newspaper lawfully obtained the information; (2) whether imposing liability on the paper serves a need to further a state interest of the highest order; and (3) the "timidity and self-censorship" which may result from allowing the media to be punished for publishing truthful information. *Id.*, 491 U.S. at 533–34, 109 S.Ct. at 2609–10.

The disposition of this case depends upon whether a fact issue exists concerning how the newspaper obtained the information on Doe. Attached to Star–Telegram and Tong's summary judgment motion is Tong's affidavit in which she claims the police report she viewed (1) was made available to her by personnel of the Fort Worth Police Department, (2) contained the business address of Doe and the location of the offense, (3) made it clear that the offense occurred at Doe's home, and (4) disclosed Doe's age, make and model of her car, her business and residence addresses, and the details of the offense.

In response, Doe filed the affidavit of Sergeant C.D. Timmons[4] in which he states (1) he did not provide any identifying information about Doe to Tong, (2) he repeatedly told Tong that it was against the procedures and practices of the department to release such information, and (3) to the best of his knowledge, these procedures and practices were always followed by himself and the other members of the department, without exception.

After reviewing this evidence, we conclude Sergeant C.D. Timmons' affidavit raises a

---

element of this cause of action. *National Bank v. Shaklee Corp.*, 503 F.Supp. 533, 539–40 (W.D.Tex.1980).

**2.** Doe abandoned her negligence theories as a separate basis for liability.

**3.** The only distinction between common-law invasion of privacy and negligence per se is that the latter does not require "case-by-case findings that the disclosure of a fact about a person's

private life was one that *a reasonable person would find highly offensive.*" *See id.*, 491 U.S. at 540, 109 S.Ct. at 2612 (emphasis added). In the current case, this distinction is inconsequential because the parties concede this element has been established.

**4.** C.D. Timmons is the officer who allegedly gave Tong a tip on the Doe assault.

fact issue as to whether the Star–Telegram and Tong obtained the information lawfully. Accordingly, we find theory (3) does not support the trial court's judgment.

Likewise, theory (2) does not support the judgment because regardless of whether there is a fact issue about the article containing matters of legitimate public concern, it is not protected if the information was secured unlawfully. Because a fact issue exists as to theory (3), a fact issue exists as to theory (2). Since judgment is precluded on all four theories, we sustain Doe's point of error.

The trial court's judgment is reversed and the case is remanded for trial.

HICKS, Justice, concurring.

While I concur with the majority as to the result, I would offer a different analysis. I would hold that a fact question exists as to whether the details of the rape and information identifying Doe were of legitimate public concern.

In some cases the issue of "newsworthiness" is a question of law for the court but sometimes a question of fact for the jury. *Gilbert v. Medical Economics Co.*, 665 F.2d 305, 309 (10th Cir.1981). Liability for public disclosure of private facts is precluded if "objective and reasonable minds [could not] differ in finding the article in question to be privileged in its entirety." *See id.* Therefore, if objective and reasonable minds could not differ on the issue, it is decided as a matter of law.

To determine whether a fact question exists in this case, I think we first need to ascertain what "private facts" Doe is alleging were improperly disclosed. Doe contends that the fact a rape occurred is a matter of public concern, but that the details of the rape and of her identity were not. The Fifth Circuit addressed this very issue in *Ross v. Midwest Communications, Inc.*, 870 F.2d 271 (5th Cir.1989).[1]

In *Ross* a television station aired a documentary questioning the guilt of a man convicted of rape. The program disclosed the details of several rapes, including Ross's. *Id.* Ross was identified as "Marla," her true first name, and a photograph of her house, at the time of the rape, was shown. *Id.* at 272.

The station said it identified Ross, her home, and the details of the rape because Ross could not identify a rape suspect named Fossum in a line-up after she was raped. *Id.* at 271. Later, Fossum was convicted of two other rapes. *Id.* The documentary sought to show how details from the Ross rape and the rape Fossum was convicted of were identical, thereby suggesting someone else committed both rapes. *Id.* at 271–72.

The court found the information was newsworthy because the details of the two rapes were so similar and the details of the Ross rape were relevant in showing Fossum may have been wrongly convicted. *Id.* at 273.

The court further pointed out that because a person's identity is not itself a private embarrassing fact, the issue is technically whether the victim's identity connected to the rape details is a matter of legitimate concern. *Id.*, at 274. While noting this issue to be one of first impression in Texas, the court found Ross's identity lent needed credibility and persuasive force to the story and to show the station's knowledge of the details of her attack. *Id.* For these reasons, the court found Ross's identity in connection with those details to also be of legitimate public concern. *Id.* at 275.

Unlike the facts in *Ross*, the details of Doe's rape and the identifying details were not "uniquely crucial" to the story; but rather, the appellees' claimed public concern goes to a "general sociological issue"—that affluent people are also victims of crime. Therefore, I would hold that objective and reasonable minds could differ in finding the details of the rape and information identifying Doe were of legitimate public concern.

For the above reasons, I concur in the opinion of the majority.

---

1. Although I realize *Ross* is not binding on this court, it does apply Texas law and I find its reasoning and language helpful in determining whether reasonable minds could differ in finding the article to be privileged in its entirety.