United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 16, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 06-50269

JOHN PATRICK LOWE,
Bankruptcy Trustee,

Plaintiff-Appellant,

versus

HEARST COMMUNICATIONS, INC.;
HEARST NEWSPAPERS PARTNERSHIP, L.P.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, and JOLLY and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

John Patrick Lowe, as Trustee for the bankruptcy estate of Ted and Mary Roberts, appeals the district court's Rule 12(b)(6) dismissal of his suit against Hearst Communications and Hearst Newspapers Partnership (collectively "Hearst"). Lowe seeks damages stemming from invasion of privacy based on public disclosure of private facts. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The San Antonio Express News, a Hearst subsidiary, published an article describing a blackmail scheme carried out by two married attorneys, Ted and Mary Roberts. The article alleged that Mary had engaged in a series of extramarital affairs and that Ted had then extorted thousands of dollars from Mary's lovers by sending them draft Rule 202 petitions[1] (the "202 documents") naming them as defendants. The 202 documents proposed to seek information on whether Ted had legal grounds for a variety of claims, including divorce and obscenity. These documents also mentioned Ted's intent to contact the men's wives and employers as witnesses. Under threat of litigation, as many as five men entered into settlement agreements with Ted, who received between $75,000 and $155,000 in total as a result. The article also contained the perspectives of five legal scholars as to the merits of the causes of action raised by Ted against Mary and her lovers and the ethics of Ted's behavior. Additionally, the story revealed details of the Roberts' domestic life, including their purchase of a $655,000 house in a San Antonio suburb, the fact that they had an eight-year-old son, and the fact that Mary was the daughter of a Lutheran minister. Ted Roberts has since been tried and convicted on charges of theft related to the allegations in the article.

The 202 documents were discovered by Ted's former law partner, Robert West, and introduced in a separate Texas state court dispute between the two of them. During that litigation, Ted and Mary alleged that West copied and removed the 202 documents from their law offices. The state trial court issued a protective order,[2] in the form of a temporary injunction, which sealed the 202

---

[1] Texas Rule of Civil Procedure 202 permits a court to authorize pre-litigation discovery to explore whether grounds for a legal claim exist.

[2] Texas Rule of Civil Procedure 192.6 allows a court to enter a protective order sealing "the results of discovery" in order to "protect the movant from undue burden, unnecessary expense,

documents and barred the parties from accessing them. Ted and Mary then filed a motion to permanently seal the 202 documents and posted a public notice of their intent, as required by Texas Rule of Civil Procedure 76a.[3] The Express-News intervened to oppose the sealing. The trial court determined that the 202 documents had not been properly sealed and ordered the entire record unsealed.

Ted and Mary appealed, and the Texas Court of Appeals reversed. The court held that the 202 documents were not "court records" as defined by Rule 76a and that the first protective order issued by the trial court was therefore valid. The court modified the temporary injunction to prevent release of the information in the 202 documents to the public, as well as to the parties and their agents. Ultimately, therefore, Express-News was denied access to the 202 documents by the Texas Court of Appeals.

At this point, the parties' accounts of the facts diverge. Express-News maintains that it obtained the 202 documents from another source and published the article. Ted and Mary argue that Express-News violated the Texas state court order and used the litigation documents as the primary source for the article.

At some point after the publication of the article, Ted and Mary declared bankruptcy. The bankruptcy trustee, John Patrick Lowe, then brought this suit in district court on behalf of the estate

---

harassment, annoyance, or invasion of personal, constitutional, or property rights."

[3] All court records are presumptively available to the public and may be sealed only pursuant to the conditions of Texas Rule of Civil Procedure 76a. However, not all documents are court records. "Before a trial court decides whether a Rule 76a hearing and order are necessary, it must determine whether the documents in question are 'court records.'" *Roberts v. West*, 123 S.W.3d 436, 440 (Tex. App. 2003). A court record may only be sealed after a hearing held in accordance with the notice procedure specified in Rule 76a. *See* Tex. R. Civ. Pro. 192.6.

seeking damages for public disclosure of private facts and intentional infliction of emotional distress. Lowe invoked diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). On January 26, 2006, the district court dismissed both claims with prejudice under Rule 12(b)(6). Lowe appeals the dismissal of only his claim for public disclosure of private facts.

## II. DISCUSSION

### A. Standard of Review

We review the district court's dismissal de novo. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). Because this case was dismissed on a Rule 12(b)(6) motion, we accept the pleadings of Lowe as true, *id.*, including his allegation that Hearst violated the state court order to obtain the 202 documents.

In this diversity case, Texas law controls the substantive law applied to Lowe's invasion of privacy claim. *Ross v. Midwest Commc'ns, Inc.*, 870 F.2d 271, 273 (5th Cir. 1989). To establish a claim for the tort of invasion of privacy based on the public disclosure of private facts, the plaintiff must show that (1) publicity was given to matters concerning his private life; (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities; and (3) the matter publicized was not of legitimate public concern. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473-74 (Tex. 1995). The test for "newsworthiness" is the same under Texas state law and federal constitutional law. *Ross*, 870 F.2d at 273. The district court determined that Ted and Mary had a legally cognizable expectation of privacy in the published facts but found that the information in the article was of legitimate public concern. The court concluded, therefore, that Lowe could not make out a prima facie case of invasion of privacy.

4

This court decides as a matter of law whether a publicized matter is of legitimate public concern. *Cinel*, 15 F.3d at 1345-46. The test for determining newsworthiness is to be construed broadly, extending beyond "the dissemination of news either in the sense of current events or commentary upon public affairs" to include "information concerning interesting phases of human activity and embrac[ing] all issues about which information is appropriate so that individuals may cope with the exigencies of their period." *Campbell v. Seabury Press*, 614 F.2d 395, 397 (5th Cir. 1980).

B. Prima Facie Claim of Invasion of Privacy

"The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public and consequently fall within the responsibility of the press to report." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975). In *Cinel*, this court held that there is a legitimate public interest in facts tending to support an allegation of criminal activity, even if the prosecutor does not intend to pursue a conviction. 15 F.3d at 1345-46 (finding a legitimate public interest in facts indicating that a priest, who had been granted immunity, possessed child pornography). While at the time the article was published the Roberts had not yet been charged with any criminal activity, the article did mention the district attorney's response, which at the time was seeming disinterest. Maro Robbins & Joseph S. Stroud, *Sex, Lawyers, Secrets at Heart of Sealed Legal Case*, SAN ANTONIO EXPRESS-NEWS, June 13, 2004, at A1. Given the broad interpretation of newsworthiness, particularly with regards to alleged criminal activity, an article describing the use of the legal system by prominent local lawyers in a way that could be described as blackmail is a matter of public concern. In this case, the newsworthiness of the story was enhanced by a discussion regarding the legal ethics of Ted's actions,

5

as well as by commentary from the prosecutor's office about its proposed response.

Lowe also argues that while the details of the alleged blackmail scheme may be matters of public concern, other details within the article, such as the Roberts' recent purchase of a house and family details were not matters of public concern and could serve as a basis for liability. The Texas Supreme Court holds that, "While the general subject matter of a publication may be a matter of legitimate public concern, it does not necessarily follow that all information given in the account is newsworthy." *Star-Telegram, Inc.*, 915 S.W.2d at 474. Nevertheless, excessive judicial intervention "foreseeably could cause critical information of legitimate public interest to be withheld until it becomes untimely and worthless to an informed public." *Id.* at 474-75; *see also Cinel*, 15 F.3d at 1346 ("[W]e are not prepared to make editorial decisions for the media regarding information directly related to matters of public concern."); *Ross*, 870 F.2d at 275 ("Exuberant judicial blue-penciling after-the-fact would blunt the quills of even the most honorable journalists."). This Circuit has declined to get involved in deciding the newsworthiness of specific details in a newsworthy story where the details were "substantially related" to the story. *Cinel*, 15 F.3d at 1346 (rejecting a challenge even where the media's use of certain material "reflected the media's insensitivity" and "embarrassed" the subject of the article). This court has also acknowledged the importance of personal details that "[c]ommunicat[e] that this [person] was a real person with roots in the community." *Ross*, 870 F.2d at 274. We similarly decline to circumscribe the paper's coverage in this case by imposing judicial rules on what is relevant and appropriate in a story that is based on very personal, which became newsworthy by their connection to the alleged crimes.

Lowe contends that, regardless of the newsworthiness of the article, the district court erred in failing to address his allegation that Hearst violated the state court's protective order by using the

202 documents as the source for its article. However, as the district court noted, under both Texas and Fifth Circuit precedent, the court may only consider the illegality of Hearst's conduct once Lowe has established a prima facie case. *See Star Telegram, Inc.*, 915 S.W.2d at 475 ("Because Star-Telegram's summary judgment evidence negated an essential element of Doe's invasion of privacy cause of action, we do not reach . . . whether truthful information was lawfully obtained." (quotation omitted)); *see also Ross*, 870 F.2d at 275. Even accepting Lowe's allegation that Hearst obtained the information in the article in violation of the court order, there can be no liability for invasion of privacy if the information is a matter of public concern. Lowe is free to seek a contempt charge, *see* Tex. R. Civ. Pro. 692 (violations of court injunctions punishable by contempt), or allege a cause of action that addresses the source of the information, *see Ross*, 870 F.2d at 275 ("[T]he discussion leaves open the state's power to protect . . . privacy by preserving the confidentiality of the state's records, and punishing any who steal the information. Liability for the wrongful taking could encompass damages resulting from the foreseeable publication of the information.").

C. Res Judicata

Lowe also argues that the state courts determined, in sealing the 202 documents and holding that they were not court records, that the documents related to the Roberts' "personal, constitutional, or property rights," Tex. Rules of Civ. Pro. 192.6(b), and that they were not relevant to "general public health or safety, or the administration of public office, or the operation of government," Tex. Rules of Civ. Pro. 76a(2)(c). Further, Lowe contends that these determinations encompass the determination that the information in the article published by Hearst is not a matter of public concern. Therefore, in Lowe's view, under the doctrines of res judicata, *Rooker-Feldman*, or *Erie*, the state court determinations are entitled to deference on the issue of public concern and the district court was

7

not entitled to reach an independent, differing conclusion on this issue.

We disagree. The tests that the Texas state courts use to evaluate whether discovery documents should be protected or sealed is quite different from the analysis of whether the documents contain "information concerning interesting phases of human activity and embrac[ing] all issues about which information is appropriate so that individuals may cope with the exigencies of their period." *Campbell*, 614 F.2d at 397. Therefore, because the same determination is not at issue, there was no relevant state court determination for the district court to which the district court should have deferred. *Next Level Commc'ns LP v. DSC Commc'ns Corp.*, 179 F.3d 244, 250 (5th Cir. 1999) (res judicata requires that the same issue be present in both cases).[4]

### III. CONCLUSION

For the above reasons, we affirm the judgment of the district court.

---

[4] The *Erie* doctrine requires a federal court sitting in diversity to apply the state law in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The district court here properly applied Texas law to the invasion of privacy claim.

"The *Rooker/Feldman* doctrine holds that federal district courts lack jurisdiction to entertain collateral attacks on state judgments." *United States v. Shepherd*, 23 F.3d 923 (5th Cir. 1994). This doctrine generally applies to "cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In this case, Lowe is the plaintiff, requesting that the federal courts exercise jurisdiction over his cause of action. Therefore, *Rooker-Feldman*, an abstention doctrine used to defeat federal jurisdiction, is not relevant in this context.

8