COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-06-298-CV

 

 

REV. JOSEPH TU NGOC NGUYEN, O.P.                                   APPELLANT

 

V.

 

THE DALLAS MORNING NEWS, L.P. AND                                 APPELLEES

THE
FORT WORTH STAR-TELEGRAM

                                                                                                        

                                              ------------

 

           FROM THE 141ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Rev. Joseph Tu Ngoc Nguyen,
O.P. appeals the trial court=s order unsealing sixteen pages of his personnel file and declaring
them to be Acourt
records@ under Texas Rule of Civil Procedure 76a(2).[2]  We affirm the trial court=s order.








                                          I.  Background

In the underlying lawsuit,
John Does I and II sued the Roman Catholic Diocese of Fort Worth (Athe Diocese@); Bishop
Joseph P. Delaney, individually and as Bishop; his predecessors and successors;
and Father Thomas H. Teczar, alleging that Teczar sexually abused them when
they were minors.  Appellant Rev. Joseph
Tu Ngoc Nguyen, O.P. (AFather Tu@) was not a party to the lawsuit.

During the course of this
litigation, the plaintiffs sought discovery of files pertaining to accusations
of sexual misconduct against minors by any cleric of the Diocese other than
Teczar.  The Diocese resisted discovery
of this and other information, and the plaintiffs moved to compel. 








Following a hearing on the
plaintiffs= second
motion to compel, the trial court ordered the Diocese to submit the files of
the clerics who had been accused of sexual misconduct against minors to the
court for an in camera inspection.  The
Diocese complied and submitted 726 pages of documents.  These documents (Athe cleric files@) relate to
allegations of sexual misconduct against seven clerics, including Father Tu,
and they include the sixteen pages of Father Tu=s personnel file (Athe Tu files@).  After inspecting the cleric files in camera,
the trial court ruled that the files were discoverable and ordered them to be
produced to the plaintiffs subject to a protective order sealing the documents.[3]  Thereafter, the trial court denied the
defendants= motion for
summary judgment, the parties settled, and the trial court entered an agreed
final order of dismissal with prejudice.  


Upon dismissing the case, the
trial court signed an agreed order providing for the return of the cleric files
to the Diocese and released the cleric files to the Diocese=s attorney.  On the same day,
appellees The Dallas Morning News, L.P. and The Fort Worth Star-Telegram (Athe newspapers@) intervened
in the dismissed lawsuit pursuant to Texas Rule of Civil Procedure 76a,
requesting that the cleric files be unsealed and made open for public
inspection.  Father Tu and the other six
clerics subsequently intervened, contending that their files were not court
records and that, even if they were, that they should remain sealed.[4]  








On February 23, 2006, the
trial court conducted the rule 76a hearing to determine whether to unseal the
files.  At the hearing, the parties
presented arguments and evidence in the form of newspaper articles and affidavits.  The newspapers and the Doe intervenors argued
that the files should be unsealed because the public was exposed to a
continuing threat, the clerics had no right of privacy in actions of sexual
misconduct, and there was a legitimate public interest in the information.  The Diocese, Father Tu, and the other six
clerics asserted that the files should remain sealed because they had personal
privacy rights in the files and that the Avoluminous@ newspaper articles
about the clerics showed that the public was already aware of the
allegations.  

After the hearing, two Doe
intervenors filed Arebuttal
affidavits@ to
contradict Father Tu=s attorney=s statements at the hearing that they never alleged he abused them and
they do not want to be involved Ain this media circus.@  The two affiants averred,
among other things, that Father Tu had sexually abused them; that they had
never recanted or denied the abuse; and that they did, indeed, want Father Tu=s files to be unsealed.   








In response to the
affidavits, Father Tu filed a AMotion for Immediate Limited Discovery on Certain Affidavits and
Supplemental Brief Regarding Rebuttal Affidavits,@ seeking to depose the affiants. 
The trial court never ruled on this motion, however, and no depositions
were taken. 

In a letter dated March 10,
2006, after conducting further in camera review of the documents, the trial court
stated that the Tu files were Acourt records@ and that Athe record is insufficient to rebut the presumption of openness as
established by rule 76a and related case law.@  The trial court later redacted
information from the 726 pages of documents and allowed counsel for the Diocese,
Father Tu, and the other six clerics Ato review the redacted documents and . . . advise
the court of any clerical errors.@  








Four months later, on July 25, 2006, the trial court signed an order
which essentially followed the pronouncements of its March 10 letter.  The trial court ruled that the clerics= files were court records under rule 76a(2) and redacted information from
the Tu files that the trial court found either implicated privacy rights of
third parties; would have a chilling effect on other claimants of clergy abuse;
might re-traumatize the claimants; would lead to the identity of a claimant or
lay member involved in the Diocese=s internal review process; or related to medical or mental health
treatment.[5]  Father Tu appeals this order.[6]      II.  Father Tu=s Motion for Discovery

In his first point, Father Tu
contends that the trial court improperly refused to grant or rule on his motion
for discovery, resulting in the denial of his right to cross-examine the Doe
intervenors and affiants and denying him due process. 

To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling,
if they are not apparent from the context of the request, objection, or motion.[7]  The objecting party must also obtain an
express or implied ruling from the trial court, or object to the trial court=s refusal to rule.[8]  If a party fails to preserve error, the
complaint is waived.[9]  








The trial court=s order is silent as to the disposition of Father Tu=s motion for discovery, and we have found nothing in the record
indicating that the trial court ever, expressly or implicitly, ruled on the
motion.  There is also nothing in the
record showing that Father Tu objected to the trial court=s refusal to rule.  We,
therefore, hold that Father Tu did not preserve the error he complains about on
appeal, and we overrule his first point.[10]

                         III.  Father Tu=s
Files Are ACourt
Records@ 

                                        Under
Rule 76a(2)

 








In his second point, Father
Tu argues that the trial court improperly found that the Tu files were court
records under rule 76a(2).  We review the
trial court=s decisions
under rule 76a for an abuse of discretion.[11]  Under this standard, we will not disturb the
trial court=s ruling
unless the trial court acted without reference to any guiding rules or
principles or in a manner that is arbitrary and unreasonable.[12]

The pertinent part of rule
76a defines Acourt
records@ as follows:

(a)  all documents of any nature filed in
connection with any matter before any civil court, except:

 

(1)  documents filed with a court in camera,
solely for the purpose of obtaining a ruling on the discoverability of such
documents;

 

(2)  documents in court files to which access is
otherwise restricted by law;

 

(3)  documents filed in an action originally
arising under the Family Code.

 

. . . . 

 

(c)  discovery, not filed of record, concerning
matters that have a probable adverse effect upon the general public health or
safety, or the administration of public office, or the operation of government,
except discovery in cases originally initiated to preserve bona fide trade
secrets or other intangible property rights.[13]








Whether documents are court
records is a threshold determination under rule 76a.[14]  When the character of documents is disputed,
the party claiming that the documents are open to the public has the burden to
prove by a preponderance of the evidence that the documents are court records.[15]  The trial court determines whether the
documents are court records based upon evidence, which may include the
documents themselves submitted in camera.[16]

The newspapers contend that
the Tu files are court records because they were filed with the trial court
and, alternatively, because they are unfiled discovery that concern matters
that have a probable adverse effect upon the general public health or safety.[17]  Father Tu argues that the documents were
never filed with the court and are not unfiled discovery concerning matters
that have a probable adverse effect upon the general public health or safety.  








A document is Afiled@ when it is
delivered or tendered to, or otherwise put under the custody or control of, the
court=s clerk.[18]  This is true regardless of whether the
document is file-stamped.[19]








The record before us shows
that the Tu files were placed under the custody and control of the trial court
clerk during the pendency of the underlying lawsuit.  John Doe II=s Response to Defendants= Motions for Summary Judgment recites that AExhibit 94: Sealed envelopes containing >Other cleric files= of the Fort Worth Diocese@ was Aattached@ and Afiled
contemporaneously.@  Accompanying the response is a letter dated
November 1, 2004, from Tahira Khan Merritt, counsel for John Does I and II, to
the Clerk of the 141st District Court, requesting that the clerk file the
response, six appendices of evidence, and two sealed volumes of evidence, all
of which the letter indicates are A[e]nclosed for filing.@  Both the response and the
letter are file‑stamped.  Moreover,
Father Tu admitted in his plea in intervention that the documents were Asubmitted@ to the
trial court in Exhibit 94 in connection with the summary judgment proceedings,
and the trial court made several references to the documents throughout the proceedings.[20]  

Based on these facts, we
conclude that the Tu files were Afiled@ with the
trial court for purposes of rule 76a.[21]  We, therefore, hold that the trial court did not
abuse its discretion in finding them to be court records under rule
76a(2).  We overrule Father Tu=s second point.

                    IV.  Father Tu=s
First Amendment Rights Are Not

                                Violated
by Unsealing his Files

 

In his third point, Father Tu
contends that the trial court=s order unsealing his files violates his privacy rights in the
documents under the federal and state constitutions and canon law.[22]  We disagree.








Once the trial court finds that
documents are court records under rule 76a, the documents are presumed to be
open to the public.[23]  The party moving for sealing has the burden
to rebut the presumption of openness by a preponderance of evidence.[24]  

Court records may be sealed
under rule 76a(1) only upon a showing of all of the following:

(a)  a specific, serious and substantial interest
which clearly outweighs:

 

(1)  th[e] presumption of openness;

 

(2)  any probable adverse effect that sealing will
have upon the general public health or safety; 

 

(b) no less restrictive means
than sealing records will adequately and effectively protect the specific
interest asserted.[25]








In deciding whether or not to seal court records,
the trial court must Abalance the
public=s interest in open court proceedings against an individual litigant=s personal or proprietary interest in privacy.@[26]

Under both the United States
and Texas Constitutions, an individual has a privacy interest in avoiding the
disclosure of certain personal matters.[27]  Marital relationships, procreation,
contraception, family relationships, child rearing and education, and medical
records fall within the constitutionally protected zone of privacy.[28]  Information contained in employment records
may, under some circumstances, be included within this protected zone.[29]








Not every publication of
intimate or embarrassing information, however, constitutes an invasion of the
constitutionally protected zone of privacy.[30]  Under Texas law pertaining to the tort of
invasion of privacy for the public disclosure of embarrassing private facts,
one=s privacy is not invaded if the matter publicized is of legitimate
public concern.[31]  We decide as a matter of law whether a matter
is of legitimate public concern.[32]  This Anewsworthiness@ test is
construed broadly and may include news in the sense of current events,
commentary on public affairs, and other information Aembrac[ing] all issues about which information is needed or
appropriate so that individuals may cope with the exigencies of their period.@[33]  








Although there is a
presumption under Texas law that the public has no legitimate interest in
private embarrassing facts about private citizens, whether a given matter is of
legitimate public concern depends on the factual context of each particular
case, the nature of the information, and the public=s legitimate interest in its disclosure.[34]  Criminal allegations related to sexual
misconduct are of legitimate public concern, so publication of these
allegations does not violate an individual=s right to privacy.[35]  In such a case, even documents protected from
disclosure under canon law may be made public.[36]

The Tu files contain
allegations that in the mid-1970s Father Tu inappropriately kissed two minor
sisters, and they discuss the Diocese=s investigation and subsequent actions with regard to Father Tu.  In addition, the affidavits of the Doe
intervenors contain the following additional allegations against Father
Tu:  

$      
Jane Doe I alleged that Father Tu fondled her
breasts when she was thirteen years old. 

 








$      
Jane Doe II alleged that when she was
approximately twenty-one, Avery troubled,@ and
vulnerable, Father Tu engaged in offensive and suggestive hugging, touching,
and unwelcome kissing on the mouth.

 

$      
Jane Doe III alleged that when she was
approximately twenty-six, Father Tu made unwanted sexual advances including
stroking her arms in a sexually suggestive manner; prolonging hugs; kissing her
cheek; brushing the side of her breasts; trying to kiss her on the mouth;
pulling her lower body against his own; and cupping her breast.

 

$      
Jane Doe IV alleged that when she was
approximately nineteen years old, Father Tu touched her in such a way as to
cause her breast to shift. 

 

$      
Jane Doe V alleged that on two or three occasions
when she was eight or nine years old, Father Tu held her tightly on his lap and
repeatedly kissed her on her face, neck, and mouth, and did the same to her
younger sister. 

 

$      
Jane Doe VI alleged that when she was seven or
eight years old, Father Tu held her tightly on his lap and kissed her face,
neck, and mouth with wet lips, and did the same to her older sister.[37]  

 

Further, on March 6, 2006,
the Doe intervenors filed the affidavit of a seventh woman alleging the
following:

$      
When she was nine or ten years old, on two
occasions, Father Tu put his hand(s) on her knee and began to move his hand(s)
up her leg, on her inner thigh.  She
further stated that her older sister told her that Father Tu also sexually
molested her when she was a child.

 








Father Tu=s alleged conduct reflected in the Tu files isCas he concedesC Ainappropriate and unacceptable@ and falls within the Texas Family Code=s definition of child abuse.[38]   Protection of children from abuse is of the
utmost importance in Texas.[39]  We, therefore, conclude that the Tu files are
of legitimate public concern and that the trial court=s refusal to seal the documents does not violate Father Tu=s First Amendment rights to privacy.[40]  








                  V.  All Privileged Medical Information in the Tu
Files

                                 Was
Appropriately Redacted

 

Father Tu
also asserts that the documents should remain sealed because they contain
privileged medical and mental health information.  The trial court, however, redacted the
medical and mental health treatment information from the documents.[41]  The redactions were an appropriate and
effective way to shield the privileged information.[42]


Father Tu,
however, argues that the trial court improperly failed to redact a diagnosis
made by laymen in which they found, after interviewing one of the alleged
victims (who was a minor at the time of the incident), that the alleged
incident constituted pedophilic behavior. 








The mental
health privilege serves to encourage the full communication necessary for
effective treatment and to prevent unnecessary disclosure of highly personal
information.[43]  Texas Rule of Evidence 510 provides in
pertinent part that A[r]ecords of
the . . . diagnosis, evaluation, or treatment of a patient which are created or
maintained by a professional are confidential and shall not be disclosed in
civil cases.@[44]  The rule defines Apatient,@ in
pertinent part, as a person who Aconsults, or is interviewed by, a professional for purposes of
diagnosis, evaluation, or treatment of any mental or emotional condition or
disorder.@[45]  The rule and definition in
Texas Health and Safety Code sections 611.001 and 611.002 are nearly identical
to rule 510.[46]








The finding
at issue was made by an investigative committee after interviewing one of
Father Tu=s alleged
victims.  The committee was not comprised
of medical professionals, and there is no evidence that the committee of laymen
either treated, evaluated, diagnosed, or consulted with Father Tu.  Therefore, he was not a Apatient@ as defined
by the rule or statute, and the investigative committee=s finding is not a mental health record that is privileged under rule
510 or section 611.002.[47]  Accordingly, we hold that the trial court did
not abuse its discretion by failing to redact the committee=s finding.[48]  

We affirm
the trial court=s order.

PER CURIAM

 

PANEL A: 
CAYCE, C.J.; HOLMAN and MCCOY, JJ.

DELIVERED:  June 19, 2008  











[1]See Tex. R. App. P. 47.4.





[2]The
only documents at issue in this appeal are these sixteen pages, Bates numbered
10-04-04 Order 0210B0225.






[3]To
the extent the trial court ordered that the documents could only be Afiled . . . under
seal,@ it
appears to have done so without regard to the procedures mandated by Texas Rule
of Civil Procedure 76a.  See Clear
Channel Commc=ns,
Inc. v. United Servs. Auto. Ass=n, 195
S.W.3d 129, 136B37
(Tex. App.CSan
Antonio 2006, no pet.) (reversing trial court=s
protective order requiring certain documents to be filed under seal because
order was entered without regard to rule 76a). 
We view the trial court=s subsequent determination
that the documents should not be sealed as a reconsideration of its prior
ruling. 





[4]Additional
alleged victims of the clericsCJohn Does III, IV, V, and VI
and Jane Does I, II, III, and IV (Athe Doe intervenors@)Chad
also intervened and were aligned with the newspapers.  Some of the Doe intervenors asserted
additional claims, which were ultimately severed from the rule 76a
proceeding.  None of the Doe intervenors
are parties to this appeal.  Although the
Doe intervenors eventually revealed their names, we use the pseudonyms for
consistency with the parties= briefing. 





[5]The
newspapers do not challenge the trial court=s redactions. 





[6]The
trial court stayed the release of the Tu files pending resolution of this
appeal. 





[7]Tex. R. App. P. 33.1(a); see also Tex. R. Evid. 103(a)(1).





[8]Tex. R. App. P. 33.1(a)(2); Frazier v.
Yu, 987 S.W.2d 607, 610 (Tex. App.CFort Worth 1999, pet.
denied).





[9]Bushell
v. Dean, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh=g).





[10]See Tex. R. App. P. 33.1(a)(2); Mead v. RLMC,
Inc., 225 S.W.3d 710, 713B14 (Tex. App.CFort
Worth 2007, pet. denied) (holding that fact that trial court granted party=s
motion for summary judgment did not allow inference that trial court sustained
that party=s
objections); Fox v. Wardy, 224 S.W.3d 300, 303 (Tex. App.CEl
Paso 2005, pet. denied) (holding issue not preserved where appellant failed to
obtain ruling on his motion); Goodchild v. Bombardier-Rotax GMBH
Motorenfabrik, 979 S.W.2d 1, 6B7 (Tex. App.CHouston
[14th Dist.] 1998, pet. denied) (op. on reh=g) (holding that appellant
failed to preserve error on motion to compel discovery where trial court never
ruled on motion and appellant failed to object to refusal to rule).





[11]Gen.
Tire, Inc. v. Kepple, 970 S.W.2d 520, 526 (Tex. 1998) (prescribing
abuse of discretion standard of review for determinations of whether documents
are court records and whether to seal documents).





[12]E.g.,
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241B42
(Tex. 1985); Wood v. Moriarty, 940 S.W.2d 359, 364 (Tex. App.CDallas
1997, no writ); Upjohn Co. v. Freeman, 906 S.W.2d 92, 95 (Tex. App.CDallas
1995, no writ).





[13]Tex. R. Civ. P. 76a(2). 





[14]Kepple, 970
S.W.2d at 524.





[15]Roberts
v. West, 123 S.W.3d 436, 441 (Tex. App.CSan Antonio 2003, pet.
denied); Upjohn, 906 S.W.2d at 95B97; Eli Lilly & Co. v.
Biffle, 868 S.W.2d 806, 808 (Tex. App.CDallas 1993, no writ); BP
Prods. N. Am., Inc. v. Houston Chronicle Publ=g Co.,
Nos. 01-05-01032-CV, 01-05-01033-CV, 2006 WL 1350303, at *2 (Tex. App.CHouston
[1st Dist.] May 18, 2006, no pet.). 





[16]Eli
Lilly & Co., 868 S.W.2d at 809.





[17]See Tex. R. Civ. P. 76a(2).





[18]Jamar
v. Patterson, 868 S.W.2d 318, 319 (Tex. 1993); Biffle v.
Morton Rubber Indus., Inc., 785 S.W.2d 143, 144 (Tex. 1990).





[19]Morton
Rubber Indus., Inc., 785 S.W.2d at 144.





[20]For
example, in its AAgreed
Order for Return of >Other
Cleric Files= . . .,@
dated April 28, 2005, the trial court recited that Exhibit 94 was Asubmitted@ in
support of plaintiffs=
response to defendants=
motions for summary judgment.  Further,
in a February 21, 2006 letter, the trial court referred to the documents as
being Aattached
to the Plaintiffs=
summary judgment response as summary judgment evidence,@ and
it ruled that Athe
documents filed with the Court as summary judgment evidence are >court
records.=@
[Emphasis added.]  In its AOrder
Transmitting Sealed Summary Judgment Evidence,@
dated April 18, 2007, by which the trial court transmitted two sealed volumes
to this court, the trial court recited that the sealed evidence was Afiled@ on
November 1, 2004. 





[21]See
Compaq Computer Corp. v. Lapray, 75 S.W.3d 669, 673B74
(Tex. App.CBeaumont
2002, no pet.) (holding that discovery subject to protective order became court
records when filed with trial court).





[22]Father
Tu cites no legal authority to support his canon law argument.  See Tex.
R. App. P. 38.1(h); Cooper v. McFadin, No. 02-06-00173-CV, 2007
WL 2405124, at *1 (Tex. App.CFort Worth Aug. 24, 2007,
pet. denied) (mem. op.) (holding that rule 38.1(h) requires a brief to contain
both citation to authority and substantive analysis in regard to an issue, and
the failure to include either waives an issue on appeal). 





[23]Tex. R. Civ. P. 76a(1); Eli Lilly &
Co., 868 S.W.2d at 809.





[24]See Eli
Lilly & Co., 868 S.W.2d at 808.





[25]See Tex. R. Civ. P. 76a(1).





[26]Kepple, 970
S.W.2d at 526.





[27]Whalen
v. Roe, 429 U.S. 589, 599B600, 97 S. Ct. 869, 876
(1977); Indus. Found. of the S. v. Tex. Indus. Accident Bd., 540 S.W.2d
668, 679 (Tex. 1976), cert. denied, 430 U.S. 931 (1977).





[28]Whalen, 429
U.S. at 599B600,
97 S. Ct. at 876; Indus. Found., 540 S.W.2d at 679.





[29]Humphreys
v. Caldwell, 881 S.W.2d 940, 946 (Tex. App.CCorpus
Christi 1994, no writ); Kessell v. Bridewell, 872 S.W.2d 837, 841B42
(Tex. App.CWaco
1994, no writ); Fox v. Anonymous, 869 S.W.2d 499, 504 (Tex. App.CSan
Antonio 1993, writ denied), abrogated on other grounds by Kepple, 970
S.W.2d at 526.





[30]Indus.
Found., 540 S.W.2d at 680.





[31]Fort
Worth Star-Telegram v. Doe, 915 S.W.2d 471, 472, 474B75
(Tex. 1995); Indus. Found., 540 S.W.2d at 682. 





[32]Lowe
v. Hearst Commc=ns,
Inc., 487 F.3d 246, 250 (5th Cir. 2007); Cinel v. Connick, 15 F.3d
1338, 1345B46
(5th Cir.), cert denied, 513 U.S. 868 (1994).  





[33]Lowe, 487
F.3d at 250; Campbell v. Seabury Press, 614 F.2d 395, 397 (5th Cir. 1980).





[34]Fort
Worth Star-Telegram, 915 S.W.2d at 474; Indus. Found., 540
S.W.2d at 685. 





[35]See
Lowe, 487 F.3d at 250B52 (stating Athere
is legitimate public interest in facts tending to support an allegation of
criminal activity, even if the prosecutor does not intend to pursue a
conviction@); Fort
Worth Star-Telegram, 915 S.W.2d at 472, 474B75
(affirming summary judgment for newspaper in invasion of privacy case where
article disclosed facts that were of legitimate public concern).





[36]See Watson
v. Jones, 80 U.S. (13 Wall.) 679, 732B33 (1871) (recognizing that
churches exist and function within the civil community and thus are as amenable
as other societal entities to rules governing property rights, torts, and
criminal conduct); Franco v. Franco, 81 S.W.3d 319, 340B44
(Tex. App.CEl
Paso 2002, no pet.) (applying civil discovery rules to documents claimed to be
privileged by canon law); see also Pennsylvania v. Stewart, 690 A.2d
195, 202 (Pa. 1997) (holding that compelled production of documents for in
camera review, and discovery of documents deemed relevant and non‑privileged,
does not impermissibly intrude upon exercise of religious beliefs and practices
even though documents were confidential under canon law).





[37]The
sisters=
mother also alleged by affidavit that her daughters told her that Father Tu
held them on his lap and repeatedly kissed their faces, necks, and mouths.  The sisters=
father alleged by affidavit that he heard rumors that Father Tu had done Abad
things@ to
two little girls, involving kissing them in his office. 





[38]See Tex. Fam. Code Ann. '
261.001(1)(E) (Vernon 2002 & Supp. 2007) (defining abuse as including Asexual
conduct harmful to a child=s mental, emotional, or
physical welfare@).





[39]E.g., In
re A.V., 113 S.W.3d 355, 361 (Tex. 2003) (recognizing the State=s
duty to protect the safety and welfare of children); Golden Spread Council,
Inc. v. Akins, 926 S.W.2d 287, 291B92 (Tex. 1996) (recognizing
legislature=s
strong policy and public=s
interest in protecting children from abuse).





[40]See
City of Sherman v. Henry, 928 S.W.2d 464, 471B72,
474 (Tex. 1996), cert denied, 519 U.S. 1156 (1997) (holding that neither
United States nor Texas Constitutions provide a right of privacy in allegations
of sexual misconduct outside of the marriage and family relationships); Fort
Worth Star-Telegram, 915 S.W.2d at 472, 474B75. 

 

Because of this holding, we need not address the probable adverse
effect that sealing would have upon the general public health or safety, or
whether less restrictive means than sealing would adequately and effectively
protect these two interests. See Lloyd Doggett & Michael J. Mucchetti, Public Access to Public
Courts: Discouraging Secrecy in the Public Interest, 69 Tex. L. Rev. 643, 678 (1991) (AAfter establishing that a >specific, serious and substantial
interest= clearly outweighs both the
openness presumption and any probable adverse effect upon the health or
safety, a movant must also show that >no less restrictive means than sealing records will
adequately and effectively protect the specific interest asserted.=@) (emphasis added).





[41]See Tex. R. Evid. 509, 510; Tex. Health & Safety Code Ann. ' 611.002 (Vernon 2003). 





[42]See,
e.g., R.K. v. Ramirez, 887 S.W.2d 836, 842B43
(Tex. 1994) (holding that even where, in limited circumstances, medical and
mental health privileges yield to discovery, certain other information in
documents Aremains
privileged and must be redacted or otherwise protected@);
Eli Lilly & Co. v. Marshall, 850 S.W.2d 155, 157, 160 (Tex. 1993)
(approving redaction of names in accordance with Acompelling
public interest considerations@).





[43]R.K., 887
S.W.2d at 840.





[44]Tex. R. Evid. 510(b)(2).





[45]Tex. R. Evid. 510(a)(2)(A).





[46]Section
611.002 provides that Arecords
of the . . . diagnosis, evaluation or treatment of a patient that are created
or maintained by a professional, are confidential.@  Tex.
Health & Safety Code Ann. ' 611.002(a).  That statute defines patient as Aa
person who consults or is interviewed by a professional for diagnosis, evaluation,
or treatment of any mental or emotional condition or disorder, including
alcoholism or drug addiction.@  Id. ' 611.001(1) (Vernon
2003).





[47]See Tex. R. Evid. 510(a)(2); Tex. Health & Safety Code Ann. ' 611.001(1).





[48]Father
Tu also asserts summarily that Athe degree of inappropriate
conduct@
reflected on page 210 Ais
obscured by the redaction of information which would shed light on the Affiant=s
perspective.@  We overrule this argument as well.  See Tex.
R. App. P. 38.1(h); Cooper, 2007 WL 2405124, at *1.