

## NUMBER 13-08-00628-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

FREEDOM COMMUNICATIONS, INC.
D/B/A THE BROWNSVILLE HERALD
AND THE VALLEY MORNING STAR,                                        Appellant,

v.

JUAN ANTONIO CORONADO, ET AL.,                                      Appellees.

**On appeal from the 357th District Court of Cameron County, Texas.**

## OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Opinion by Justice Garza

In this interlocutory appeal, appellant, Freedom Communications, Inc. d/b/a the *Brownsville Herald* and the *Valley Morning Star* ("Freedom"), challenges the trial court's denial of its motion for summary judgment. Freedom, a newspaper publisher, was sued by appellees, Juan Antonio Coronado, Francisco Solis Ramirez, Roberto Rivera, III, and Ruben Contreras, for defamation and invasion of privacy arising out of political advertisements printed in Freedom's newspapers in February and March of 2008. On appeal, Freedom argues that the trial court erred by denying its motion for summary judgment because: (1) the fair report privilege, as provided at common law and by statute,

bars the appellees' suit; (2) the advertisements at issue are substantially true; and (3) the appellees cannot establish the elements of invasion of privacy. We affirm.

## I. BACKGROUND

This case concerns a full-page newspaper advertisement taken out by the campaign of Peter Zavaletta, a candidate for District Attorney of Cameron County, Texas, in 2008. Different versions of the advertisement appeared in two newspapers published by Freedom—the *Brownsville Herald* and the *Valley Morning Star*—on the days leading up to the Texas Democratic primary election on March 4, 2008.

The advertisement, first printed on February 26, 2008 in both the *Herald* and the *Morning Star*, was prepared by an advertising agency hired by Zavaletta, and was intended to criticize the record of the incumbent District Attorney, Armando Villalobos. The advertisement stated in large type on the top of the page that "'ARMANDO VILLALOBOS IS *AGAINST* OUR CHILDREN'" (emphasis in original). The left half of the page contained a chart entitled "Cases Involving Children (2007)" which consisted of five columns and 103 rows of data purportedly detailing the disposition of child-related cases by the Cameron County District Attorney's office in 2007. The chart included the following typical entries:

| CHARGE | NAME OF ACCUSED | CASE NO. | AGENCY | DISPOSITION |
|---|---|---|---|---|
| . . . | . . . | . . . | . . . | . . . |
| Sexual Abuse of Child | Francisco Solis Ramirez | Intake | Harlingen PD | Declined at Intake |
| . . . | . . . | . . . | . . . | . . . |
| Physical Abuse of Child | Ruben Contreras | Intake | Harlingen PD | Declined at Intake |
| . . . | . . . | . . . | . . . | . . . |
| Sexual Abuse of Child | Juan Antonio Coronado | Intake | Brownsville PD | Declined at Intake |
| . . . | . . . | . . . | . . . | . . . |

| Sexual Abuse of Child | Roberto Rivera, III | Intake | Laguna Vista PD | Declined at Intake |
|---|---|---|---|---|
| . . . | . . . | . . . | . . . | . . . |

The right half of the advertisement contained, in part, the following text:

> The District Attorney must always protect those who are unable to protect themselves, and always stand up for the weak, the defenseless, and for those with no voice.
>
> As these records from 2007 only establish, Armando Villalobos has invariably **stood against children** who have been sexually abused, sexually assaulted, or physically injured, and stood with those who would commit such heinous crimes.
>
> Armando Villalobos' record proves he is morally unfit for public office.
>
> . . . .
>
> As your District Attorney, my team and I will **aggressively prosecute** these cases and insist that the convicted be **incarcerated**.

(Emphases in original.)

A second version of the advertisement ran in the *Herald* on February 29, 2008. This version included only the initials of those individuals listed in the chart, such as the appellees, whose cases were declined at intake by the District Attorney's office. This second version also included a table summarizing the information provided in the chart:

ARMANDO VILLALOBOS' RECORD ON CHILDREN (2007)

DISPOSITION

| | |
|---|---|
| Declined at Intake | 77 |
| Deferred Adjudication | 17 |
| Sent to Pretrial Diversion and Dismissed | 2 |
| Dismissed | 4 |
| Acquitted by Jury | 1 |
| Probation | 1 |
| Plea Bargained to Public Lewdness | 1 |

| | |
|---|---|
| **Incarcerations** | **0**[1] |
| TOTAL AMOUNT OF CASES | 103 |

(Emphasis in original.) Below the summary table was a sentence further distilling the information provided in the chart to its essence: "***In 103 cases involving crimes against children, Armando Villalobos couldn't even send one defendant to prison!***" (Emphasis in original.) This version of the advertisement ran again in the newspapers on March 2, 3, and 4.[2]

On March 18, 2008, Coronado and Ramirez filed suit against Freedom, Zavaletta, and Yolanda De Leon, a board member of the Cameron County Children's Advocacy Center ("CCCAC"), asserting causes of action for invasion of privacy by disclosure, and defamation. An amended petition was later filed on September 23, 2008, adding Rivera and Contreras as plaintiffs and requesting exemplary damages.[3] The petitions specifically alleged that the advertisements contained false and defamatory statements of fact about the appellees, that the defendants acted negligently and maliciously, and that the appellees suffered injury as a result.

The petitions noted that the information contained in the "Cases Involving Children" chart that appeared in the advertisements was excerpted from a "Case Disposition Report" originally prepared by the District Attorney's office. According to the plaintiffs, De Leon obtained the report from the District Attorney's office in her capacity as a CCCAC board member, and she then provided the report to the Zavaletta campaign for use in the

---

[1] The line marked "Incarcerations" was printed in bold and in a larger typeface than the remainder of the summary table.

[2] The version of the advertisement that ran on March 2 and 3 included the full names of all the individuals listed in the chart, like the February 26 version, but unlike the February 29 and March 4 versions.

[3] The September 23, 2008 amended petition also added Edgar Israel Gonzalez and Juan Antonio Hernandez as plaintiffs. Gonzalez and Hernandez were later non-suited. Zavaletta and De Leon, the other defendants below, are not parties to this appeal.

advertisement.[4]  The plaintiffs contended in their petition that the information provided in the report

> is, pursuant to the laws of the State of Texas, strictly confidential, and is not to be published for general or public information and every report (and the information set forth in such report) remains confidential when it is transmitted to the CCCAC pursuant to the laws of the State of Texas, including Texas Family Code section 264.408.[[5]]

Freedom filed a motion for traditional summary judgment on April 11, 2008, arguing that it is entitled to judgment as a matter of law on all of the appellees' claims because, among other reasons:  (1) the advertisements are protected by the common law and statutory fair report privilege; (2) the advertisements do not, as a matter of law, constitute an actionable public disclosure of private facts concerning appellees; and (3) the advertisements do not, as a matter of law, constitute an actionable defamation because they are "true or substantially true."[6]  Accompanying Freedom's motion were affidavits by Juan Avila, an employee of the *Herald*, and Maribel Villarreal, an employee of the *Morning Star*.  In their affidavits, both Avila and Villarreal stated that Zavaletta's advertising agency provided the Case Disposition Report to the respective newspapers in order to substantiate the factual allegations made in the advertisements.  Avila further stated that:

> Neither I nor anyone employed by *The Brownsville Herald* had knowledge of any inaccuracies in the political ads prior to the publication of the political advertisements.  Neither I nor anyone employed by *The Brownsville Herald* had any reason to doubt the accuracy of any factual statements contained in the political ads.

Villarreal made a similar statement in her affidavit with respect to herself and employees of the *Morning Star*.

---

[4] The appellees note that De Leon herself had lost to Villalobos in a prior election for Cameron County District Attorney.

[5] Section 264.408 of the Texas Family Code provides in part that any records used or developed by the Department of Family and Protective Services are confidential and are not subject to public release, but may be released to "law enforcement agencies . . . and other state agencies that provide services to children and families."  TEX. FAM. CODE ANN. § 264.408(a), (a)(1) (Vernon 2008).

[6] Freedom later filed an amended motion for traditional summary judgment on October 29, 2008, making substantially the same arguments.

Attached to the affidavits were copies of the Case Disposition Report, which bore the name, letterhead, and seal of the District Attorney's office. It is undisputed that the information in the Case Disposition Report was used to compile the "Cases Involving Children" chart that appeared in the advertisements. The Case Disposition Report, like the chart in the advertisements, purportedly detailed the names, case numbers, charges, and dispositions of cases involving children in Cameron County in 2007. However, the Case Disposition Report included dozens more entries and provided more detailed information regarding each case as compared to the chart in the advertisements. For example, unlike the chart in the advertisements, the Case Disposition Report included columns entitled "Victim Name," "Jury/No Jury," and "SANE Y/N."[7] Further, the report contained more details regarding the reasons for the disposition of each particular case. For example, Ramirez's and Rivera's entries in the report stated that their cases were "Declined at intake due to insufficient evidence." Similarly, Contreras' entry stated "Declined insufficient evidence." Coronado's entry in the report contained an even more detailed description of the disposition of his case: "Declined on intake—while there is some evidence of inappropriate activity, there is not sufficient evidence of any criminal activity to prove beyond a reasonable doubt."

The appellees filed a response to Freedom's motion for summary judgment on November 14, 2008, arguing in part that: (1) the statements in the advertisements are not "true or substantially true" because they are "misleading" and "omitted material facts"; (2) Freedom did not conclusively establish that its publication of the advertisements was privileged; and (3) Freedom did not conclusively negate the elements of invasion of privacy. Attached to the response were affidavits by the appellees, each stating as follows:

> Contrary to the advertisements published by The Brownsville Herald and Valley Morning Star that are the subject of this suit, I did not commit a heinous crime, or other crime, against a child. I was not charged with the

---

[7] "Jury/No Jury" referred to whether or not the particular suspect had a jury trial; "SANE Y/N" referred to whether or not the victim had been examined by a sexual assault nurse examiner.

crime set forth in the advertisements published by The Brownsville Herald and Valley Morning Star that are the subject of this suit, or any crime against a child. I was not a defendant in regard to a crime against a child.

The response also included an affidavit by Joe Krippel, a felony prosecutor with the District Attorney's office, stating that the "Case Disposition Report" used to create the chart in the Zavaletta advertisement is a "confidential" report provided to CCCAC on a monthly basis and is "not meant for public disclosure."

On November 26, 2008, after a hearing, the trial court denied Freedom's motion for traditional summary judgment. This accelerated interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(6) (Vernon 2008) (permitting appeal of an interlocutory order that "denies a motion for summary judgment that is based in whole or in part upon a claim against . . . a member of the electronic or print media . . . arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73," regarding libel); *see also* Tex. R. App. P. 28.1(a).

## II. Standard of Review

We review a trial court's denial of a traditional motion for summary judgment under a de novo standard of review. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.7 (Tex. 2005) (citing *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 290 n.137 (Tex. 2004)); *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App.–Corpus Christi 2003, no pet.). To obtain relief via a traditional motion for summary judgment, the movant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Mowbray v. Avery*, 76 S.W.3d 663, 690 (Tex. App.–Corpus Christi 2002, pet. denied). To meet this burden, a defendant must either conclusively negate at least one of the essential elements of a cause of action or conclusively establish each element of an affirmative defense. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *Tex. Monthly, Inc. v. Transam. Natural Gas Corp.*, 7 S.W.3d 801, 805 (Tex. App.–Houston [1st Dist.]

1999, no pet.).

In deciding whether there is a disputed fact issue that precludes summary judgment, evidence favorable to the non-movant will be taken as true. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)). Evidence favorable to the movant, however, will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). Moreover, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Grinnell*, 951 S.W.2d at 425 (citing *Nixon*, 690 S.W.2d at 549).

## III. DISCUSSION

### A. Fair Report Privilege

The fair report privilege is a common law defense to defamation rooted in First Amendment jurisprudence. *See* U.S. CONST. amend. I; *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 490-91 (1975).[8] The privilege protects the publication of defamatory matter concerning another in a report of an official action or proceeding "if the report is accurate and complete or a fair abridgement of the occurrence reported." RESTATEMENT (SECOND) OF TORTS § 611 (1977).[9] "So long as the publication fairly and accurately reports the contents of the law enforcement statement without embellishment, the publication is

---

[8] The privilege will also serve as an affirmative defense to an invasion of privacy claim. *See* RESTATEMENT (SECOND) OF TORTS § 652G, cmt. a (1977) ("Under any circumstances that would give rise to a conditional privilege for the publication of defamation, there is likewise a conditional privilege for the invasion of privacy.").

[9] The United States Supreme Court has explained the policy behind the fair report privilege as follows:

[I]n a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations. Great responsibility is accordingly placed upon the news media to report fully and accurately the proceedings of government, and official records and documents open to the public are the basic data of governmental operations. Without the information provided by the press most of us and many of our representatives would be unable to vote intelligently or to register opinions on the administration of government generally.

*Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 491-92 (1975).

8

privileged, even if the underlying facts being reported on are untrue or defamatory." *Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 655 (Tex. App.–Houston [14th Dist.] 2008, no pet.) (citing *Yohe v. Nugent*, 321 F.3d 35, 43-44 (1st Cir. 2003); *Mathis v. Phila. Newspapers, Inc.*, 455 F. Supp. 406, 417 (E.D. Pa. 1978); *Steer v. Lexleon, Inc.*, 472 A.2d 1021, 1026-27 (Md. Ct. Spec. App. 1984)). In other words, the "accuracy" of the publication is determined not by comparing it to the actual facts, but to the law enforcement statement upon which the publication is based. *See Goss*, 252 S.W.3d at 655; *see also Freedom Comm'ns, Inc. v. Sotelo*, No. 11-05-00336-CV, 2006 Tex. App. LEXIS 5132, at *9 (Tex. App.–Eastland June 5, 2006, no pet.) (mem. op.). Official statements from law enforcement agencies will trigger application of the privilege. *Goss*, 252 S.W.3d at 655.

The privilege has also been codified in section 73.002 of the civil practice and remedies code, which applies to any "fair, true, and impartial account of . . . an official proceeding, other than a judicial proceeding, to administer the law" as well as any "reasonable and fair comment on or criticism of an official act of a public official or other matter of public concern published for general information." TEX. CIV. PRAC. & REM. CODE ANN. § 73.002(b)(1)(B), (b)(2) (Vernon 2005). A published account is "fair, true, and impartial" under the statute if it is a substantially correct account of a government record. *See Tex. Monthly*, 7 S.W.3d at 805 (citing *Crites v. Mullins*, 697 S.W.2d 715, 717 (Tex. App.–Corpus Christi 1985, writ ref'd n.r.e.)). In determining whether the publication is substantially correct, we consider whether the statement was more damaging to the plaintiff's reputation in the mind of the average reader than a correct statement would have been. *Id.* (citing *Crites*, 697 S.W.2d at 717). If the effect on the mind of the recipient would be the same, any variance between the actions charged and the actions proved should be disregarded. *Id.* (citing *Finklea v. Jacksonville Daily Progress*, 742 S.W.2d 512, 515 (Tex. App.–Tyler 1987, writ dism'd w.o.j.); *Crites*, 697 S.W.2d at 717). That is, a publication that exaggerates an official report is nevertheless substantially correct "if an ordinary reader would not attach any more opprobrium to the plaintiff's conduct merely because of the

9

exaggeration." *Id.* at 805-806.

Where the facts are undisputed and the language used in the publication is not ambiguous, the question of privilege is ordinarily one of law for the court. *See Denton Publ'g Co. v. Boyd*, 460 S.W.2d 881, 884 (Tex. 1970); *Christy v. Stauffer Publ'ns, Inc.*, 437 S.W.2d 814 (Tex. 1969); *see also Sotelo*, 2006 Tex. App. LEXIS 5132, at *8. However, the language used in the advertisements at issue here was not unambiguous. We find that an issue of material fact exists as to whether the privilege applies here.

Two primary considerations lead us to this conclusion. First, although the "Cases Involving Children" chart that appeared in the advertisements faithfully reproduced parts of the Case Disposition Report prepared by the District Attorney's office, there were key omissions made that obscured the full meaning of the report. Specifically, the chart omitted the detailed information provided in the report regarding the specific reasons that the appellees' cases were declined by the District Attorney's office, such as the lack of evidence. Additionally, the chart suspiciously omitted some 34 entire entries that appeared in the report, the majority of which corresponded to cases where the District Attorney's office had pursued and obtained convictions. Without this information, the reader of the chart is justifiably left with the impression that the District Attorney's office secured absolutely no convictions for child-related offenses in 2007; the reality, however, was different. Moreover, because the suspects who were actually convicted were omitted from the chart, readers of the advertisement may have been left with the impression that most of the individuals listed had actually committed the crimes they were accused of, which the report did not explicitly state.[10] In other words, the omissions may have made the chart more damaging to the appellees' reputations in the mind of the average reader than a full

---

[10] In their response to Freedom's first issue, the appellees also note that the Case Disposition Report contained "strictly confidential, non-public information, which . . . remains confidential when it is transmitted to the CCCAC" and are "not public records at all." However, the fair report privilege statute does not require that a government report be "public" in order for the privilege to apply. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.002 (Vernon 2005). We need not determine whether the Case Disposition Report was in fact "strictly confidential" because it has no bearing on the issue of whether the fair report privilege applies. *See* TEX. R. APP. P. 47.1.

and complete reproduction of the report would have been. *See Tex. Monthly*, 7 S.W.3d at 805 (citing *Crites*, 697 S.W.2d at 717).

Second, the language that appeared adjacent to the chart on the right half of the advertisements was arguably misleading and unsupported by the information contained in the Case Disposition Report. Particularly questionable is the paragraph that reads: "*As these records from 2007 only establish,* Armando Villalobos has invariably **stood against children** who have been sexually abused, sexually assaulted, or physically injured, and stood with *those who would commit such heinous crimes*" (first and third emphases added; second emphasis in original). An average, ordinary reader of the advertisement would understand this paragraph to mean: (1) children have been sexually abused, sexually assaulted, or physically injured in Cameron County in 2007; (2) the suspects listed in the chart "would commit" the listed offenses against those children; and (3) the chart to the left of the text "establish[es]" those facts. However, the Case Disposition Report prepared by the District Attorney's office does not explicitly support these facts. Nowhere does the Case Disposition Report state that the listed suspects "would commit" the crimes of which they were accused. Instead, the report merely recites the disposition of all child-related cases in Cameron County, whether or not the cases turned out to be unsupported by evidence. Indulging every reasonable inference in favor of the appellees, *see Grinnell*, 951 S.W.2d at 425, we find that the advertisement "embellished" the Case Disposition Report in such a way that it was "more damaging" to the appellees' reputations than an unembellished report would have been. *See Goss*, 252 S.W.3d at 655*; Tex. Monthly*, 7 S.W.3d at 805; *see also* RESTATEMENT (SECOND) OF TORTS § 611 cmt. f ("The reporter is not privileged under this Section to make additions of his own that would convey a defamatory impression, nor to impute corrupt motives to any one, nor to indict expressly or by innuendo the veracity or integrity of any of the parties.").

Other language that is arguably unsupported by the Case Disposition Report is the following sentence, which appeared in the February 29, 2008 version and subsequent

versions of the advertisements: "*In 103 cases involving crimes against children, Armando Villalobos couldn't even send one defendant to prison!*" (emphasis in original). It is true that none of the suspects listed in the "Cases Involving Children" chart were incarcerated; however, the chart did not list all of the child-related cases disposed of by the District Attorney's office in 2007. In fact, as previously noted, the Case Disposition Report reflected that the District Attorney's office had actually disposed of 137 child-related cases in 2007, many of which eventually resulted in the suspect's conviction and incarceration. Additionally, the summary table included in some versions of the advertisement stated "TOTAL AMOUNT OF CASES . . .103." This statement is ambiguous in that it is unclear whether the figure refers to the total number of cases listed in the adjacent "Cases Involving Children" chart, or whether it refers to the total number of child-related cases disposed of by the District Attorney's office in 2007. Because of these ambiguities, we cannot say that Freedom established as a matter of law that the advertisement was a "substantially correct" account of the Case Disposition Report. *See Tex. Monthly*, 7 S.W.3d at 805 (citing *Crites*, 697 S.W.2d at 717).

Taking all evidence in favor of the appellees as true, *see Grinnell*, 951 S.W.2d at 425, we conclude that an issue of material fact remains as to whether the Zavaletta campaign advertisements were "fair, true, and impartial account[s]" of the Case Disposition Report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.002(b). Accordingly, Freedom did not meet its burden to establish its entitlement to judgment as a matter of law, and the trial court did not err in denying Freedom's motion for summary judgment on this basis.[11] *See* TEX.

---

[11] Freedom further argues by its first issue that it conclusively negated the contention made by the appellees that it acted with malice in publishing the Zavaletta campaign advertisements.

Both the common law and statutory fair report privileges are qualified privileges in that they are lost if the defendant's publication is made with malice. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). Therefore, to successfully invoke the privilege at the summary judgment stage, the defendant "must conclusively establish that the allegedly defamatory statement was made with an absence of malice." *Id.*; *see Martin v. Sw. Elec. Power Co.*, 860 S.W.2d 197, 199 (Tex. App.–Texarkana 1993, writ denied); *see also Freedom Comm'ns, Inc. v. Sotelo*, No. 11-05-00336-CV, 2006 Tex. App. LEXIS 5132, at *14 (Tex. App.–Eastland June 5, 2006, no pet.) (mem. op.).

We need not address this issue here, however, because we have already determined that Freedom

12

R. Civ. P. 166a(c); *Grant*, 73 S.W.3d at 215; *Mowbray*, 76 S.W.3d at 690. Freedom's first issue is overruled.

## B. Truth Defense

Freedom argues by its second issue that the Zavaletta campaign advertisements "cannot be made the basis of a defamation suit" because the statements in those advertisements were true or substantially true as a matter of law.

Truth of the published statement is a complete defense to a defamation action and will support summary judgment.[12] Tex. Civ. Prac. & Rem. Code Ann. § 73.005 (Vernon 2005); *Randall's Food Mkts.*, 891 S.W.2d at 646; *see McIlvain v. Jacobs*, 794 S.W.2d 14, 15-16 (Tex. 1990). A communication will be considered true for purposes of the truth defense if it is substantially true at the time the statement is made. *See, e.g., City of Brownsville v. Pena*, 716 S.W.2d 677, 682 (Tex. App.–Corpus Christi 1986, no writ). When determining whether a statement is "substantially true," we ask if it is no more damaging to the plaintiff in the mind of the average reader than a true statement would have been. *See McIlvain*, 794 S.W.2d at 15-16. Minor inaccuracies will not constitute falsity so long as "the substance, the gist, the sting, of the libelous charge" is justified. *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991). When a defamation action is brought by a private plaintiff, as here, the defendant bears the burden of proving that the allegedly defamatory statements were true. *Randall's Food Mkts.*, 891 S.W.2d at 646 (citing *Town of South Padre Island v. Jacobs*, 736 S.W.2d 134, 140 (Tex. App.–Corpus Christi 1986, writ denied)).

As discussed above, Freedom has not conclusively established that the Zavaletta campaign advertisement was a substantially correct account of the Case Disposition Report. We find further that Freedom has failed to establish as a matter of law that the

---

has failed to conclusively establish its entitlement to the protection of the privilege such as would support summary judgment in its favor. *See* Tex. R. App. P. 47.1.

[12] On the other hand, truth cannot serve as a defense to the appellees' claim of invasion of privacy by disclosure. *See Doe v. Star-Telegram*, 864 S.W.2d 790, 792 n.1 (Tex. App.–Fort Worth 1993), *rev'd on other grounds*, 915 S.W.2d 471 (Tex. 1995).

advertisement is substantially true. One could reasonably infer from the advertisement that the appellees committed crimes against children, and we are bound to indulge every reasonable inference in favor of the appellees in determining whether an issue of material fact exists. *See Grinnell*, 951 S.W.2d at 425.

It is also important to note that a publication can convey a false and defamatory meaning by omitting or juxtaposing facts, even if all the publication's individual statements considered in isolation are literally true or non-defamatory. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000); *Entravision Comm'ns Corp. v. Belalcazar*, 99 S.W.3d 393, 398 (Tex. App.–Corpus Christi 2003, pet. denied); *cf. Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677, 681 (Tex. App.–El Paso 2001, no pet.) (stating that "the implications of a true statement, however unfortunate, do not vitiate the defense of truth"). Here, the juxtaposition of the language on the right side of the advertisement with the chart on the left side gave a strong impression that those listed in the chart had in fact committed crimes against children but were not prosecuted. Taking all evidence in favor of the appellees as true, *see Grinnell*, 951 S.W.2d at 425, we must conclude that this juxtaposition conveyed a false and defamatory meaning that was more damaging to the appellees than a true statement would have been. *See McIlvain*, 794 S.W.2d at 15-16.

Because an issue of material fact exists as to whether the advertisements at issue here are substantially true, Freedom has not established that it is entitled to judgment as a matter of law on the basis of this affirmative defense. Therefore, Freedom's second issue is overruled.

C.    **Invasion of Privacy by Disclosure**

By its third issue, Freedom contends that the trial court erred in denying its motion for summary judgment with respect to the appellees' invasion of privacy claim based on public disclosure of private facts. In order to recover damages for this tort, the appellees

14

must prove that: (1) publicity was given to matters concerning the appellees' private life[13]; (2) the matter publicized is not of legitimate public concern; and (3) the publication of those matters would be highly offensive to a reasonable person of ordinary sensibilities. *Indus. Found. of the South v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 682 (Tex. 1976).

Freedom argues that it conclusively negated all three of the essential elements of the appellees' invasion of privacy claim. First, it contends that it conclusively established that the information included in the advertisements was of "legitimate public concern" because it discussed "alleged criminal activity" in Cameron County. "The determination whether a given matter is one of legitimate public concern must be made in the factual context of each particular case, considering the nature of the information and the public's legitimate interest in its disclosure." *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 474-75 (Tex. 1995). Freedom notes that the Fifth Circuit has held that "there is a legitimate public interest in facts tending to support an allegation of criminal activity, even if the prosecutor does not intend to pursue a conviction." *Lowe v. Hearst Comm'ns, Inc.*, 487 F.3d 246, 250-52 (5th Cir. 2007) (applying Texas law) (citing *Cinel v. Connick*, 15 F.3d 1338, 1345-46 (5th Cir. 1994)). However, the advertisements at issue here did not disclose any underlying facts that would *support* an allegation of criminal activity against the appellees. Rather, the advertisements stated only that such allegations were *in fact made* against the appellees and were subsequently reported to the District Attorney's office. While underlying facts reflecting criminal activity can certainly be of legitimate public interest, Freedom points to no authority, and we find none, holding that the public has a legitimate interest in the mere fact that an individual has been accused of a crime.[14] Absent such authority, we cannot say

---

[13] The disclosure of facts that are a matter of public record will not give rise to a public disclosure invasion of privacy claim. *See Cohn*, 420 U.S. at 494-95 (noting that "the interests in privacy fade when the information involved already appears on the public record").

[14] In arguing that the subject matter of the advertisements was "of legitimate public concern," the dissent notes that "[p]rotection of children from abuse is of the utmost importance in Texas" (citations omitted). By suggesting that the Court's decision today is somehow at odds with the goal of "[p]rotect[ing] children from abuse," the dissent has ironically—but unsurprisingly—employed the same type of moralistic intimidation that Zavaletta used to tar his opponent as complicit in child abuse.

that the information contained in the advertisement was of "legitimate public concern" as a matter of law. *See Indus. Found. of the South*, 540 S.W.2d at 682.

Freedom also asserts that it conclusively established that the advertisements (1) "contain no details about appellees' 'personal lives'" and (2) are not "highly offensive to a reasonable person." However, Freedom provides this Court with no argument, authorities, or record citations to support these assertions. Accordingly, we consider them waived. *See* TEX. R. APP. P. 38.1(i).

We conclude that Freedom did not meet its burden to establish that it is entitled to judgment as a matter of law on the appellees' invasion of privacy claim. Accordingly, the trial court did not err in denying Freedom's motion for summary judgment on those grounds. *See* TEX. R. CIV. P. 166a(c). We overrule Freedom's third issue.

## IV. CONCLUSION

The trial court's denial of Freedom's motion for summary judgment is affirmed.

      DORI CONTRERAS GARZA,
Justice

Opinion delivered and filed this
the 14th day of August, 2009.

---

Of course, this Court agrees with the general proposition that the protection of children from abuse is a supreme public policy objective of this state. However, the dissent does not explain how the publication of mere accusations of child abuse without any supporting evidence, as is the case here, serves to advance this cause. The dissent also fails to recognize that by classifying a mere accusation of child abuse as an item "of legitimate public concern," it ignores the ideal which it espoused previously in the opinion—that is, that "an accused is innocent until proven guilty."

16